**2010 BNH 016**
_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                                               Bk. No. 10-10261-JMD
Chapter 7

Marc G. Visconti,
              Debtor

*Michael J. Scott, Esq.*
*Scott & Scott, P.A.*
*Londonderry, New Hampshire*
*Attorney for Debtor*

*Michael S. Askenaizer, Esq.*
*Law Offices of Michael S. Askenaizer*
*Nashua, New Hampshire*
*Chapter 7 Trustee*

## MEMORANDUM OPINION

### I. INTRODUCTION

Michael Askenaizer, the chapter 7 trustee (the "Trustee"), filed an objection (Doc. No. 14) (the "Objection") to the homestead exemption claimed by Marc Visconti (the "Debtor") in the proceeds from the sale of the Debtor's former home. The Trustee argues that the Debtor cannot claim a homestead under New Hampshire law because, before filing for bankruptcy, the Debtor conveyed his entire interest in the home to his wife while they were still married, and he was not awarded any ownership interest in the home under the terms of a final divorce decree. The Trustee also filed a related motion to compel the Debtor to turn over the proceeds from the sale of the home because the proceeds are property of the estate under § 541 of the Bankruptcy

Code[1] (Doc. No. 13) (the "Motion").  Because the Motion is contingent on the success of the homestead arguments in the Objection, the Court addresses the Objection first.  The real issue in this dispute is whether the Debtor's property interest awarded to him under the final divorce decree is just a personal property interest in the proceeds of the sale of the home or an equitable interest in the real estate that might entitle him to claim a homestead.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.).  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. FACTS

The Debtor and his wife had lived in their home at 15 York Road, Hampstead, New Hampshire, since June 1996.  On June 19, 2007, the Debtor conveyed his interest in the home to his wife by warranty deed.  Nearly six months later, on December 6, 2007, the Debtor and his wife filed for divorce, though the Debtor still continued to live in the home from time to time with the children pursuant to a temporary order of the Rockingham County Superior Court.  In May 2009, the Superior Court entered a final divorce decree and divided up the marital assets between the Debtor and his wife.  Two sections of that decree are relevant here.  In section III of the decree, titled "Asset and Debt Division," the Superior Court discussed what should be done with the home:

---

[1] In this opinion the terms "Bankruptcy Code," "section" and "§" refer to title 11 of United States Code, 11 U.S.C. § 101 et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8.

> The equity in the home shall be evenly divided, and each party shall have his or her automobile.
> There was disagreement over whether the home should be sold. Both parties, as well as the [Guardian ad Litem], agree it would be in the children's best interest that the children remain in the marital home. However, given the present economic circumstances, neither party is in a position to buy out the other's share. Neither party can afford to continue to maintain the home on a long-term basis, or have his or her share of the equity tied up on a long-term basis while the other resides in the home with the children. Therefore, the home shall be sold and the proceeds evenly divided. This will allow each of the parties to have some resources to start new lives with the children.

Objection, Ex. 5 at 5-6. The Superior Court then detailed specific orders regarding assets and debts, including the home:

> 14. **Marital Home:** The marital home shall be listed for sale forthwith with a licensed real estate agent, by the parties' agreement. The parties shall cooperate fully with the sale of the marital home. Any and all proceeds from the marital home shall be divided equally between the parties, after all reasonable and usual costs have been deducted.
> Pending the sale of the house, the parties shall continue to alternate occupancy of the home under the same terms and conditions as the Court's Temporary Orders of April 2008. Mr. Visconti shall be responsible for all costs associated with the marital home, including utilities, maintenance, real estate taxes, homeowner's insurance and all other costs. The parties shall each be responsible for purchasing food for the children and themselves during their time in the home.
> . . . .

Objection, Ex. 5 at 9.

The Debtor filed for chapter 7 bankruptcy on January 27, 2010. On his schedule A, the Debtor listed the home and claimed an equitable interest "equal to half of the equity." On schedule C, the Debtor also claimed an exemption for $77,974.00 in his interest in the home under N.H. Rev. Stat. Ann. ("RSA") § 480:1. At the § 341 meeting, the Debtor testified that his ex-wife sold the home on January 28, 2010, one day after he filed for bankruptcy. The Trustee later learned that the proceeds from the sale totaled $114,459.41, half of which was the Debtor's

share of the proceeds.  At the closing, two checks were issued—one payable to the Debtor for $33,490.34 and another payable to the Debtor's attorney, Michael Scott, as an escrow agent, for $38,496.72.  The Debtor was paid the first check, and the second check was deposited into an escrow account pending a dispute in the underlying divorce case.  At the § 341 meeting, the Debtor also testified that he spent more than half of his proceeds and that only $12,000.00 remained.  The Debtor has since turned over that $12,000.00 to the Trustee.

The Trustee then filed the Objection and the Motion, which the Court heard on an expedited basis.  After the hearing, the Court took the matters under submission.

## III. DISCUSSION

### A. The arguments

As the party objecting to the exemption, the Trustee bears the burden of proof.  Fed. R. Bankr. P. 4003(c).  The Trustee argues that the Debtor is not entitled to claim a homestead exemption under RSA 480:1 for two main reasons.  First, the Debtor conveyed all his interest in the home in June 2007 to his wife while they were still married, so that act extinguished any homestead right.  Second, the Debtor has no interest in the property—equitable or otherwise—because, under the final divorce decree, he only has a right to the proceeds from the sale of the home.  The Trustee contends that the Debtor's right to the proceeds is akin to a personal property right, no different than a chose in action or a charge against an account, but it is not an equitable right protected by the RSA 480:1 homestead exemption.

The Debtor makes two basic arguments.  First, he points to the statutory language of RSA 480:1, arguing that the statute does not define what "interest" is required to claim a homestead

and that the final divorce decree gave him an equitable property interest in the home recognized by New Hampshire common law. Second, he argues that the purpose of RSA 480:1 is to secure to debtors and their families the shelter of the homestead and that he has met the "occupancy" requirement to claim a homestead exemption because he also lived in the property on the petition date.

### B. The New Hampshire homestead exemption

The New Hampshire homestead statute provides that "[e]very person is entitled to $100,000 worth of his or her homestead, or of his or her interest therein, as a homestead." RSA 480:1. New Hampshire courts have said that the purpose of the homestead statute is "to secure to debtors and their families, the shelter of the homestead roof; not to exempt mere investments in real estate, or the rents and profits derived therefrom." Stewart v. Bader, 154 N.H. 75, 88 (2006) (quoting Austin v. Stanley, 46 N.H. 51, 52 (1865)). "Occupancy is essential to the existence of the homestead right" and the occupancy "must be actual and physical in nature." Id. In addition, occupancy alone does not preserve the homestead right—it also requires ownership. See Gerrish v. Hill, 66 N.H. 171 (1890) (no homestead right when the debtors sold a farm but continued to live on it); Beland v. Goss, 68 N.H. 257 (1895) (homestead right was lost when the property was sold and the debtors moved out); see also Stewart, 154 N.H. at 89 (defendant lost homestead right by lack of occupancy but court also noted that the property was sold several years before). Thus, the homestead exemption under RSA 480:1 requires both occupancy and ownership. However, a spouse who does not hold an ownership interest does have a right to occupy the homestead during the owner-spouse's lifetime and can claim a homestead right for their life after the death of the owner-spouse. See RSA 480:3-a.

In previous bankruptcy decisions interpreting RSA 480:1, this Court has said that the homestead right "is extinguished by the conveyance of the premises and removal therefrom." Schalebaum v. Town of Wolfeboro (In re Schalebaum), 273 B.R. 1, 2 (Bankr. D.N.H. 2001) (citing Beland). In Schalebaum, Judge Vaughn recognized that RSA 480:1 provides "no statutory protection of the homestead right upon the voluntary sale of the homestead" before the bankruptcy proceeding. Id.; see also In re Dubravsky, 374 B.R. 467 (Bankr. D.N.H. 2007) ("the voluntary sale of a residence results in a loss of the homestead right under New Hampshire law").

### C. Analysis

#### 1. The Debtor's conveyance before bankruptcy

The Debtor conveyed his interest in the home to his wife in June 2007 and he admits that. The Debtor claims though that because he remained in the property on the petition date, he still met the occupancy requirement to claim a homestead. The Debtor's voluntary June 19, 2007 conveyance to his spouse extinguished his right to claim ownership in the homestead but not his homestead right because his spouse was the owner and he continued to occupy the property. See RSA 480:3-a. On May 4, 2009, the Superior Court approved the marital master's recommendation for a final divorce decree. Under the terms of the final decree, the Debtor's marriage to the owner was dissolved, and he continued to occupy the homestead from time to time subject to the terms of the final divorce decree. The divorce decree became a final court order well before the Debtor filed his bankruptcy petition. Accordingly, as of the petition date, the Debtor was not married to the owner of the property and held only a one-half interest in the proceeds of the homestead after its sale. Under New Hampshire law, individuals may claim a

homestead interest only in property that they or their spouse own.  No homestead may be claimed in property owned by an individual to whom the person is not married, even if they occupy the property.  Ownership must exist either in the person claiming the homestead or in that person's spouse.  On the petition date, the Debtor could not claim any such ownership interest.

### 2. The Debtor's interest under the final divorce decree

The Debtor also argues that he retained an equitable property "interest" under RSA 480:1 under the terms of the final divorce decree that allows him to claim a homestead exemption.  Put differently, he claims he has an interest in the home (and a homestead) rather than just in the proceeds from the sale of the home.  The divorce was finalized well before the Debtor filed for bankruptcy, so any interest he has is therefore controlled by the final divorce decree.[2]

Bankruptcy courts are frequently called upon to interpret divorce decrees entered by state courts.  Normally, they do so in the context of nondischargeability complaints under § 523(a) in determining whether an award is for alimony and support or a property division.  That determination is a matter of federal law.  See, e.g., Werthen v. Werthen (In re Werthen), 329 F.3d 269, 272-73 (1st Cir. 2003).  Here, however, the matter involves applying state law interpretive principles.  In ascertaining the meaning of a divorce decree, New Hampshire courts "look to the plain meaning of the language and at the meaning of the language in the context of the entire decree."  Bonneville v. Bonneville, 142 N.H. 435, 438 (1997).  Any subsidiary clauses "are construed so as not to conflict with the primary purpose of the decree."  Id.

---

[2] This might have been a different case had the divorce been ongoing because New Hampshire law recognizes an equitable interest in the "marital estate" during divorce proceedings.  See In re Skorich, 332 B.R. 77 (Bankr. D.N.H. 2005); Bursey v. Town of Hudson, 143 N.H. 42 (1998).

The Court finds that the final divorce decree only gave the Debtor a monetary interest in the proceeds of the sale of the home, not an equitable property interest in the actual real estate. The plain meaning of the language used in the decree requires this result.  First, the decree ordered that the "equity in the home shall be evenly divided" and "the home shall be sold and the proceeds evenly divided" because neither the Debtor nor his wife could afford to maintain the home long-term.  The decree thus refers to dividing "equity" and distributing "proceeds" evenly. It does not refer to another type of interest besides a monetary one.  Second, the decree also ordered the home to be "listed for sale forthwith" and, while the house was waiting to sell, the Debtor and his wife were ordered to alternate occupancy of the home under the terms of temporary orders entered in the divorce action, mainly to keep the children in one home even though the Debtor and his wife could no longer live together.  Thus, it appears that the Debtor's occupancy on the petition date was fortuitous and was not because he was given some special property interest in the real estate.  The decree's primary purpose for the marital home was to sell it quickly, divide up the proceeds, and let each party go his or her separate way.  Based upon the plain language and the entire context, the decree only gave the Debtor a monetary interest in the proceeds from the sale of the home.  As such, he is not entitled to claim a homestead for those proceeds.  See Schalebaum, 273 B.R. at 2-3 (denying debtor's claim for a homestead exemption for proceeds from the voluntary sale of his home before bankruptcy).

**IV.  CONCLUSION**

For those reasons, the Objection will be sustained.  The Trustee's arguments in the Motion were derivative of those in the Objection.  Because the Debtor cannot claim a homestead

exemption in the proceeds, that property must be turned over to the Trustee. Thus, the Motion will be granted and the Debtor (and any other parties holding the proceeds) will be ordered to turn the proceeds over. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will enter orders consistent with this opinion.

ENTERED at Manchester, New Hampshire.


Date: April 7, 2010            /s/ J. Michael Deasy
                               J. Michael Deasy
                               Bankruptcy Judge