2011 BNH 006

___

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                                                          Bk. No. 10-10261-JMD
                                                                                                Chapter 7
Mark G. Visconti,
           Debtor


*Krista E. Atwater, Esq.*
*Atwater Law*
*Rye, New Hampshire*
*Attorney for Debtor*

*Michael S. Askenaizer, Esq.*
*Nashua, New Hampshire*
*Chapter 7 Trustee*

*Peter G. Beeson, Esq. and Daniel J. Callaghan, Esq.*
*Devine Millimet & Branch, Professional Association*
*Manchester, New Hampshire*
*Attorneys for Michael J. Scott and Scott & Scott P.A.*

*Ann Marie Dirsa, Esq.*
*Office of the United States Trustee*
*Manchester, New Hampshire*
*Attorney for the United States Trustee*

*Diane M. Gaspar, Esq.*
*Howie Law Office, PLLC*
*Salem, New Hampshire*
*Attorney for Brenda Brule*

## MEMORANDUM OPINION

### I. INTRODUCTION

      The Court has before it Debtor's Partially Assented-To Motion to (A) Approve Settlement Agreement; (B) Convert Case to Chapter 13; (C) Confirm Chapter 13 Plan Dated As of May 5, 2011 and (D) Other Relief (Doc. No. 83) (the "Motion"). The Motion was filed to

obtain Court approval of an omnibus settlement of the Debtor's contentious chapter 7 proceeding involving his appeal of an adverse ruling on an exemption claim, two complaints under § 727 of the Bankruptcy Code and a claim against his original bankruptcy counsel. After notice, the Court held a hearing on the Motion on May 5, 2011.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. FACTS

At the hearing, the parties stipulated that the Court could treat the affidavit submitted by the United States Trustee ("UST") in support of his objection to the Motion as evidence for purposes of ruling on that portion of the Motion requesting conversion to chapter 13. The factual elements of the history below are drawn from that affidavit and the undisputed facts presented by the parties in their filings and at the hearing.

The Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code on January 27, 2010. The first meeting of creditors was convened by Michael Askenaizer, the chapter 7 trustee (the "Trustee") on February 23, 2010. At the creditors' meeting, the Trustee discovered that the Debtor had received proceeds from the sale of his former residence which had occurred only a few days after the filing of his bankruptcy petition. The Debtor stated that he had received $32,000.00 in proceeds from the sale of his former residence pursuant to a final divorce decree in May of 2009 and that the residence had been titled in his former spouse's name since March of 2007. He also stated that he had put some of the money in the bank, used some of it to

pay bills, and had about $16,000.00 left, which he later revised to "about 14,000." The Debtor had claimed a homestead exemption in these proceeds.

    The Trustee advised the Debtor and his counsel:

> I want you to put it in your trust account. I don't want him spending another dime, because otherwise you're – there's a good chance you're going to lose your discharge if you do it. I want – until we resolve this issue. All right. And I want a full accounting of the 32,000, what happened to it. But I don't think you have a homestead exemption.

When asked by the Trustee if he would be giving his attorney all of the money to hold, the Debtor stated "I will." The Debtor ultimately turned over $12,000.00 of the sale proceeds to his counsel.

    On May 11, 2010, the Trustee timely filed an objection the Debtor's claim of a homestead exemption in the sale proceeds (Doc. No. 14) (the "Homestead Objection") and a motion to compel the Debtor and his counsel to turn over the proceeds to the Trustee (Doc. No. 13) (the "Turnover Motion"). On March 17, 2010, the Court held a hearing on the Homestead Objection and the Turnover Motion. On April 7, 2010, the Court issued its memorandum opinion and entered orders sustaining the Homestead Objection and granting the Turnover Motion. On April 21, 2010, the Debtor filed a notice of appeal from the order sustaining the Homestead Objection.

    In a Rule 2004 examination conducted by the UST on June 30, 2010, the Debtor testified that he picked up a check dated January 28, 2010, payable to him in the amount of $33,490.34, issued by the title company that conducted the closing on his former residence, from his bankruptcy counsel sometime after the closing. He testified that he encountered difficulty in opening a bank account with the check because the bank "found [his] name was on a consumer

3

report" and that he "owed TD Bank $200 or something."  The Debtor then returned to his counsel's office and asked him to convert the check into smaller checks so that he could cash them at the bank upon which they were drawn.  On February 2, 2010, the Debtor's counsel issued fourteen trust account checks payable to the Debtor:  one check in the amount of $20,000.00, twelve checks in the amount of $1,000.00 each and one check in the amount of $1,490.34.

 On February 3, 2010, the Debtor used the $20,000.00 check to open a checking account at River Bank in North Andover, Massachusetts.  In addition, three of the fourteen checks given to the Debtor by his counsel, totaling $3,490.34 were cashed on February 2, 2010.  Two checks totaling $2,000.00 were cashed on February 3, 2010, and two more checks totaling $2,000.00 were cashed on February 8, 2010.  Accordingly, as of February 8, 2010, the Debtor still had six of the fourteen checks given to him by his counsel representing $6,000.00 of proceeds from the sale of his former residence.  As of February 23, 2010, the date of the first meeting of creditors, the Debtor's account at River Bank had a balance of $16,342.71.  Including the six checks in the Debtor's possession, he held $22,342.17 in proceeds on the date of the first meeting.  Between the date the River Bank account was opened on February 3, 2010, and the date of the first meeting, where the Trustee admonished the Debtor not to spend any of the money, the balance in the Debtor's River Bank checking account decreased to $12,902.25.  Between March 2 and March 5, 2010, the Debtor cashed the remaining six checks in his possession in the amount of $6,000.00.  On or about March 8, 2010, the Debtor gave his counsel a check for $12,000.00 to return to the Trustee.  In summary, between February 2, 2010, the date the Debtor had effective possession and control of the sale proceeds, and February 23, 2010, the date of the first meeting

of creditors, the Debtor used $14,588.09.  After the first meeting, the Debtor used $6,902.25 and turned over $12,000.00 to the Trustee.

In addition to the funds given to the Debtor on February 2, 2010, the Debtor's counsel was also holding $38,462.72 in additional proceeds from the sale of the residence pending a resolution of unstated claims by the Debtor's former spouse.  Ultimately, the Trustee entered into a stipulation with the former spouse on the division of these moneys and was paid an additional $19,198.80.  As of the date of the hearing on the Motion, the Trustee held $31,198.80 representing a portion of the Debtor's interest in the proceeds from the sale of his former residence.

On July 21, 2010, the Trustee and the UST each timely filed complaints objecting to the Debtor's discharge under § 727 of the Bankruptcy Code.  See Adv. Nos. 10-1084-JBH and 10-1083-JBH, respectively.  On January 21, 2011, the United States Bankruptcy Appellate Panel for the First Circuit ("BAP") granted an assented to motion to cancel the oral argument scheduled for January 24, 2011, to stay the appeal until March 24, 2011, and to relinquish so much jurisdiction as may be necessary to permit this Court to consider a settlement between the parties.  On March 25, 2011, the BAP extended that stay until May 19, 2011.  After a hearing on the Motion, the Court took that portion of the Motion requesting conversion to chapter 13 under advisement and deferred ruling on the balance of the Motion.

## III. DISCUSSION

The Motion requests approval of a settlement of all disputes among the Trustee, the Debtor and the Debtor's original counsel ("Original Counsel").  The terms of the settlement are: (1) the amount of $26,000.00 will be paid to the Trustee by the Original Counsel and its insurer,

5

to resolve all claims against the Original Counsel by the Trustee and the Debtor; (2) the Debtor will waive any claim of exemptions to any of the money in the hands of the Trustee, including the proceeds from the sale of his former residence and the monies to be paid by the Original Counsel and its insurer; (3) the appeal to the BAP will be withdrawn; (4) the Original Counsel and its insurer will pay $27,000.00 to the Trustee for the fees and expenses incurred by his counsel in this matter and will pay an additional $16,000.00 to a legal fees account to be held by the chapter 13 trustee to pay the fees and expenses of Debtor's current counsel; (5) the Trustee will agree to dismiss his § 727 complaint; (6) the parties to the settlement will consent to conversion of the chapter 7 proceeding to chapter 13; (7) the parties to the settlement will support confirmation of a chapter 13 plan which will pay the approximately $57,000.00 held by the Trustee to the chapter 13 trustee as a single payment plan for distribution to creditors; and (8) the Debtor will receive a discharge under § 1328 of the Bankruptcy Code.  The Debtor's former spouse has a significant priority domestic support obligation claim and does not oppose the settlement.  However, the UST is opposed to the settlement.

      Because the UST has not agreed to the settlement, the parties need to convert the case to chapter 13 in order for the Debtor to obtain a discharge without litigating the UST's § 727 complaint.  The Trustee is supporting the settlement because the settlement places the chapter 7 bankruptcy estate in the same position it would have been if the Debtor had transferred all of the proceeds due to him from the sale of his residence immediately after the petition date without the need for the Trustee to retain counsel or litigate the Homestead Objection or the Turnover Motion.  The UST opposes the settlement on a number of grounds, but the primary reason is that, as a policy matter, the Debtor's conduct during the chapter 7 proceeding should not be rewarded with a discharge under chapter 13.

At the conclusion of the hearing, the Court indicated that it would first consider the evidentiary record and the arguments of the parties on the Debtor's eligibility to convert to chapter 13 and defer ruling on the other relief requested in the Motion. If the Debtor is not eligible for conversion to chapter 13, the settlement, as it is currently structured, cannot be approved. If the Debtor is eligible to convert to chapter 13, then the settlement can be considered on the merits in connection with a confirmation hearing on any chapter 13 plan filed by the Debtor.

### A. Applicable Law

The Debtor's request to convert to chapter 13 is determined under § 706 of the Bankruptcy Code. A debtor does not have an absolute right to convert his case to chapter 13. Marrama v. Citizens Bank of Massachusetts, 549 U.S. 365 (2007). A chapter 7 debtor may forfeit his right to convert to his case to chapter 13 by engaging in fraudulent conduct. Id. at 374-75. The decision in Marrama was based on the Supreme Court's view of the relationship between several provisions of the Bankruptcy Code. Section 706(d) provides that a chapter 7 debtor may not convert a case to another chapter under § 706(a) unless the debtor qualifies to be a debtor under that chapter. Id. at 372. In order to qualify to be a debtor under chapter 13, a debtor must satisfy the requirements of § 109(e) and § 1307(c). Id. Section 109(e) imposes both secured and unsecured debt limitations and a requirement that a debtor has "regular income." Section 1307(c) permits a bankruptcy court to dismiss or convert a chapter 13 case to chapter 7 "for cause." Bankruptcy courts routinely treat dismissal for bad faith conduct either prepetition, or before conversion to chapter 13, as cause for dismissal. Id. at 373. Accordingly, the Supreme Court concluded that a finding that a debtor had engaged in "prepetition bad-faith conduct, including fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling

that the individual does not qualify as a Debtor under Chapter 13." Id. at 374. The UST argues that the Debtor's conduct during and after the first meeting demonstrates sufficient bad faith to warrant a forfeiture of his right to convert to chapter 13 under Marrama.

In Marrama, the Supreme Court declined to discuss what type of conduct constitutes sufficient "bad faith" to warrant forfeiture of the right to convert to chapter 13. Id. However, the Court did indicate that a debtor's conduct must be "atypical" and that denial of conversion should be limited to extraordinary cases. Id. at 375 n.11. Bad faith is the antithesis of good faith. Neither of the terms "good faith" or "bad faith" are defined in the Bankruptcy Code. Sullivan v. Solimini (In re Sullivan), 326 B.R. 204, 212 (B.A.P. 1st Cir. 2005). The determination of good faith is a fact intensive inquiry to be assessed on a case-by-case basis in light of the totality of the circumstances. In re Lilley, 91 F.3d 491, 496 (3d Cir. 1996) (joining the Seventh, Ninth and Tenth Circuits) (citations omitted); Sullivan, 326 B.R. at 212 (citing In re Love, 957 F.2d 1350, 1355 (7th Cir. 1992)). Factors considered in evaluating good faith include: (1) the debtor's accuracy in stating debts and expenses; (2) the debtor's honesty in the bankruptcy process, including whether he has attempted to mislead the court or whether he has made any misrepresentation; (3) whether the Bankruptcy Code is being unfairly manipulated; (4) the type of debt sought to be discharged; (5) whether the debt would be dischargeable in a chapter 7 proceeding; and (6) the debtor's motivation and sincerity in seeking chapter 13 relief. Sullivan, 326 B.R. at 212.

In Marrama, the debtor undervalued assets in his bankruptcy schedules and denied having transferred any property outside the ordinary course of business in the year before bankruptcy. Neither of his statements were true and he later admitted that the undisclosed transfer had been made for the purpose of protecting the property from his creditors. Marrama,

8

549 U.S. at 368. After the chapter 7 trustee advised Marrama and his counsel that he intended to recover the transferred property for the benefit of the estate, Marrama filed a notice of conversion to chapter 13. The bankruptcy court found that the facts established a bad faith case and denied the request to convert to chapter 13. The Supreme Court held that Marrama's conduct was the type of atypical conduct that resulted in a forfeiture of his right to proceed under chapter 13. Id. at 371.

### B. Analysis

The Court shall now examine the conduct of the Debtor in this case utilizing the factors identified by the courts under the totality of the circumstances test.

#### 1. The Debtor's Accuracy

In his original bankruptcy schedules, the Debtor claimed a homestead exemption in the proceeds from the sale of his former residence, but failed to disclose the facts and circumstances surrounding the previous transfer of title to his ex-spouse or the prepetition divorce decree. Immediately after the filing of the bankruptcy petition and schedules, the residence was sold. After the closing, two checks were delivered to counsel for the Debtor, one payable to him and one to be held pending a resolution of disputed claims by his ex-spouse. The record does not contain any evidence on the analysis of these facts by either the Debtor or his Original Counsel, but it appears that the bankruptcy schedules filed by the Debtor were less than candid on the subject of the former residence. Based on the paucity of facts in the record, however, the Court shall assume for the purposes of this opinion that any errors were inadvertent or due to a misapprehension of the significance of those facts and not an attempt to conceal the true facts.

The record in this case does reflect, however, that on the date of the first meeting of creditors the Debtor had a bank account balance of $16,342.71 as well as checks from his

9

Original Counsel totaling $6,000.00, for a total of $22,342.17.  All of this money represented proceeds from the sale of his former residence.  When the Trustee focused his questions on the Debtor's right to a homestead exemption claim to these funds, the Debtor first stated that he had about $16,000.00 left, then lowered his estimate to $14,000.00.  The Trustee directed the Debtor not to spend any more of the funds and to turn over those funds to him.  The Debtor agreed to turn over whatever funds he had to the Trustee.  Ultimately, the Debtor turned over $12,000.00 to his Original Counsel for delivery to the Trustee.  However, before turning over money to the Trustee, the Debtor cashed and used the $6,000.00 in checks in his possession on the date of the first meeting.

   The Court questions the credibility of the Debtor's statements at the first meeting about the remaining proceeds.  It is undisputed that the Debtor had difficulty opening a bank account with the initial check that he received for the sale of his former residence.  In order to solve his need for cash, he took the check back to his Original Counsel and asked for it to be broken into smaller checks of $1,000.00 each that he could cash, as needed.  Given the steps taken by the Debtor to gain ready access to those proceeds, it is not credible that he did not know at the first meeting that he had checks remaining, or the value of those checks.  It is also not credible that the Debtor had uncashed checks and did not have an accurate knowledge of the balance in his bank account.

   Even if the Debtor was unsure of the exact bank balance or the amount of uncashed checks, his conduct after the first meeting demonstrates an intent to conceal and deny the Trustee custody of funds that the Trustee had claimed as property of the estate.  If the Debtor made a bona fide mistake in his statements at the first meeting, he was under an obligation to correct the error.  He told the Trustee he would turn over the remaining proceeds in his possession.  Instead,

10

he intentionally disregarded his obligations, and his promise, and did not turn over all of the funds to the Trustee.  The Court finds the conduct of the Debtor at and after the first meeting to demonstrate an intent (1) to mislead the Trustee and misrepresent the amount and existence of his assets and (2) to conceal property from the Trustee

### 2. The Debtor's Honesty in the Bankruptcy Process

The Trustee is the person charged with the collection and distribution of the Debtor's bankruptcy estate.  11 U.S.C. § 704.  At and after the first meeting, the Debtor mislead and concealed from the Trustee assets that the Trustee advised him he had no right to control or expend.  Such conduct demonstrates a failure to honestly satisfy his obligations to the Trustee in fulfilling his responsibilities under the Bankruptcy Code.

### 3. Unfair Manipulation of the Bankruptcy Code

The conduct of the Debtor described above resulted in the filing of an objection to his discharge under § 727 by the UST.  The UST has not agreed to the terms of the Settlement, and, therefore, will not consent to the dismissal of his complaint objecting to discharge.  The Debtor's sole reason in converting to chapter 13 is to effectively dismiss the § 727 complaint over the objection of the UST.  The Debtor is not proposing to pay his creditors from his disposable income over the applicable commitment period under the Bankruptcy Code.  See 11 U.S.C. §§ 1325(b)(1)(B) and (b)(4).  Instead, the Debtor is proposing a single payment plan funded by the proceeds from the settlement of his claim, and a claim by the Trustee, against the Debtor's Original Counsel.  The proceeds of the settlement could just as well be paid to the Trustee for distribution under chapter 7.  However, distribution under chapter 7 would not resolve the UST's objection to discharge.  The sole rationale for conversion to chapter 13 is to effectively dismiss the UST's complaint objecting to discharge without his consent.  Chapter 13 was not enacted to

permit Debtors to resolve lawsuits with single payment plans.  While avoiding a suit by actually paying money to creditors from disposable income may be acceptable under most circumstances, it is not acceptable under the circumstances of this case.  Proposing a single payment plan, funded by settlement of a claim against a debtor's bankruptcy counsel, by a debtor without disposable income, is unfair manipulation of the Bankruptcy Code.

### 4.  The Type of Debt to be Discharged

The debts reflected in the Debtor's schedules and the filed proofs of claim appear to be debts incurred in the ordinary financial affairs of the Debtor and raise no special concern for the purposes of this opinion.

### 5.  Dischargeability of the Debts in a Chapter 7 Proceeding

The debts reflected in the Debtor's schedules appear to dischargeable in a chapter 7 proceeding.  There is no evidence, or argument, that the Debtor is seeking to discharge a debt which would not otherwise be dischargeable.  The basis for the UST's objection is not the character of the Debtor's debts, but the character of his conduct during this bankruptcy case.

### 6.  Debtor's Motivation and Sincerity in Seeking Chapter 13 Relief

For the reasons discussed above, the Court finds that the Debtor is seeking chapter 13 relief solely for the purpose of effectively dismissing the UST's § 727 complaint objecting to his discharge over the UST's objection and not for the purpose of paying the Debtor's creditors from his disposable income.

### C.  Summary

For the reasons discussed above, the Court finds that the Debtor's request to convert to chapter 13 is made in bad faith.  The conduct of the Debtor in this bankruptcy case represents the "atypical" conduct described by the Supreme Court as warranting a forfeiture of the right to

convert under § 1307(c) of the Bankruptcy Code.  <u>Marrama</u>, 549 U.S. at 375 n.11.  Because the settlement contemplated in the Motion requires conversion to chapter 13, there is no reason to defer a ruling on the Motion.

## IV.  CONCLUSION

For the reasons set forth above, the Debtor has forfeited his right to convert to chapter 13 and, therefore, the Court shall enter a separate order denying the Motion.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

ENTERED at Manchester, New Hampshire.


Date:   May 9, 2011                              <u>/s/ J. Michael Deasy</u>
                                                 J. Michael Deasy
                                                 Bankruptcy Judge